## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## HELENA DIVISION

|  |  |
|---|---|
| GRAND RIVER ENTERPRISES SIX NATIONS, LTD., <br><br> Plaintiff. <br><br> vs. <br><br> AUSTEN KNUDSEN, in his official capacity, Attorney General of the State of Montana, <br><br> Defendant. | **CV-23-48-H-BMM** <br><br> **ORDER** |

## INTRODUCTION

Grand River Enterprises Six Nations, LTD., ("GRE") has moved for a Temporary Restraining Order against Montana Attorney General Austin Knudsen (the "Attorney General"). (Doc. 6.) GRE seeks to enjoin the Attorney General from implementing a recent decision to impose a ban on the wholesale shipment and distribution of GRE products within Montana and to remove GRE from a state-maintained list of approved tobacco product manufacturers. (Doc. 7.) The Court held a hearing in this matter on July 14, 2023. (Doc. 18.) The Court will deny GRE's request for a temporary restraining order for the following reasons.

## BACKGROUND

Montana law requires the Attorney General to maintain a directory (the "Montana Tobacco Directory") of tobacco products sold in the state. The Montana Tobacco Directory lists "all tobacco product manufacturers that have provided current and accurate certifications conforming to [specific requirements] and all brand families that are listed in the certifications." Mont. Code Ann. § 16-11-504. Montana has established a process for each tobacco product manufacturer to obtain the annual certification that allows its products' sale within the state. Mont. Code Ann. § 16-11-503. Tobacco product manufacturers must complete the certification and remain included in the Montana Tobacco Directory to sell their products.

The annual certification process commences in April of each year. Tobacco product manufacturers must certify that their brand styles "are intended to be sold in the United States" and that they will "immediately notify the [Attorney General] . . . if any information in th[e] Certification changes." (Doc. 8-2 at 3.) The law directs the Attorney General to monitor each tobacco product manufacturer's compliance with the certification process and remove from the Montana Tobacco Directory tobacco product manufacturers who fail to comply with certification requirements. Mont. Code Ann. § 16-11-504(4). Montana law prohibits the sale of a manufacturer's tobacco products if that manufacturer is not included in the Montana Tobacco Directory: "it is unlawful for any person to . . . sell, offer for sale, or possess for sale in this state cigarettes of a tobacco product manufacturer or brand family not

included in the [Montana Tobacco Directory]." Mont. Code Ann § 16-11-505. GRE operates as a tobacco product manufacturer. This dispute centers on the certification, or lack thereof, of eight out of the more than thirty types of GRE tobacco products listed on the Montana Tobacco Directory. (Doc. 7 at 3.) GRE claims that it has complied with Montana law and that it and its products have remained listed on the Montana Tobacco Directory for more than ten years. (*Id.*)

The Court now will provide additional background regarding GRE's participation in the Montana tobacco market and the Attorney General's unique oversight of GRE's operations. GRE participates in the Montana tobacco market pursuant to an Assurance of Voluntary Compliance agreement ("AVC") it entered with the State in 2012. (Doc. 8-1.) The State does not require compliance agreements for each cigarette manufacturer operating in Montana: GRE entered the AVC with the State following several alleged violations of the laws regulating tobacco product manufacturers. (*Id.* at 3.) GRE sought, in other words, to "come into compliance with the laws of the State of Montana and to be listed on the [Montana Tobacco Directory] as a non-participating manufacturer whose cigarettes are approved for sale in the State of Montana." (*Id.* at 3.)

The AVC requires GRE to comply with specific terms to sell its products in Montana. (*Id.*) The AVC's mandates include that GRE comply with "all local, state, and federal laws," and the AVC provides that "failure to abide by any terms of this

3

AVC is grounds for the immediate removal of [GRE] from the Montana [Tobacco] Directory." (*Id.* at 4.) The AVC, as relevant here, also submits the parties to Montana state district court for enforcement actions: "The Montana First Judicial District Court, Lewis and Clark County, shall retain jurisdiction over the subject matter of this AVC and over [GRE] for purposes of enforcement." (*Id.*) The AVC finally states that "[t]he parties acknowledge and agree that this AVC is voluntarily entered into by the parties as a result of arm's-length negotiations and that the parties each had the opportunity to review this matter with counsel prior to executing this AVC." (*Id.* at 5.)

GRE asserts that it received a letter from the Attorney General on May 9, 2022, raising a limited issue with GRE's 2022 certification. (Doc. 7 at 3.) The Attorney General's letter asserted that GRE had requested in 2020 that the Food and Drug Administration ("FDA") withdraw eight brand styles from a specific product review process the FDA had implemented pursuant to the Food Drug and Cosmetic Act ("FDCA.") (*Id.* at 3-4); (Doc. 8-2.) The FDA's review process ensures that tobacco products sold in the United States are unadulterated. Products that do not complete the review are considered adulterated and misbranded, and federal law does not allow their sale in the United States. (Doc. 8-9 at 30.)

The Attorney General alleged that GRE had withdrawn the eight brand styles from FDA review in January 2020, and, as a result, the FDA in February 2021 had

deemed them adulterated and prohibited GRE from selling, marketing, or distributing these eight styles. (Doc. 8-2); (Doc. 8-9 at 8, 30.) The Attorney General further alleged that GRE knowingly had included these eight brand styles in its 2020 and 2021 Montana Tobacco Directory certifications despite the FDA's determination that the products were adulterated. The Attorney General viewed GRE's conduct as violating state and federal law. (Doc. 8-2 at 2-4.) The Attorney General's letter informed GRE that the eight products would be removed from the Montana Tobacco Directory and that the Attorney General considered the removal an "enforcement action." (Doc. 7 at 3); (Doc. 8-2 at 4.)

GRE responded to this letter on May 26, 2022. (Doc. 7 at 3.) GRE confirmed to the Attorney General that, in January 2020, it had requested that the FDA withdraw the eight brand styles from review. (*Id.* at 3-4.) GRE asserted in its letter to the Attorney General that it did not object to removing the eight brand styles from the 2022 Montana Tobacco Directory. The 2022 Montana Tobacco Directory included all of GRE's products except for the eight brand styles referenced in GRE's and the Attorney General's letters. (*Id.* at 4.)

The Attorney General sent a letter to GRE on June 14, 2023, informing it that the Attorney General had sent all Montana wholesalers a "Notice of Intent to Remove," notifying Montana wholesalers that they were prohibited from selling GRE products if the products were shipped to wholesalers after June 14, 2023. (*Id.*

at 4); (Doc. 8-9 at 1.) The letter also informed GRE that the Attorney General would remove all of GRE's products from the Montana Tobacco Directory on July 14, 2023. (Doc. 7 at 4); (Doc. 8-9 at 1-3.)

The Attorney General cited the AVC agreement to support the enforcement action. (Doc. 8-9 at 1.) GRE claims that the Attorney General imposed this ban with immediate effect and offered no prior notice or opportunity to be heard. (Doc. 7 at 5.) GRE asserts that the Attorney General provided the following reason for the ban: "GRE had listed in its 2020 and 2021 certifications eight products that GRE had requested the FDA withdraw from FDA review in January 2020, and that seeking renewed listing on the Directory of those eight products thus constituted acts done 'in violation of federal law.'" (*Id.*)

GRE summarizes the Attorney General's justification as follows: "[U]nder [the AVC] entered by the parties eleven years ago (2012), the AG's mere allegation of a violation of federal law allows it immediately to ban the distribution of GRE products in Montana and remove GRE from the Montana Tobacco Directory - with no due process." (*Id.*) GRE contends that the AVC agreement does not allow this type of unilateral action by the Attorney General. (*Id.*)

GRE has filed a suit in Montana state district court, reopening the Montana state district court proceeding that had yielded the AVC. (*See* Doc. 18.) GRE seeks in the Montana state court action to address the same 2023 ban and removal from

the Montana Tobacco Directory at issue here. (*Id.*) GRE represented during the hearing on this Motion that it has asked the Montana state district court to assume jurisdiction over the dispute pursuant to the AVC's jurisdictional provisions and Montana law. (*See id.*) GRE also represents that it has sought a restraining order in the Montana state district court proceeding. (*See id.*) GRE claims that it sought this injunctive relief in Montana's First Judicial District in June 2023 but has not yet received a ruling. The Court assumes, given the timing of GRE's Complaint and Motion for a Temporary Restraining Order here filed, that GRE now seeks an alternate avenue to pursue similar relief. GRE here argues, among other things, that the Attorney General's actions violate federal constitutional due process requirements. (Doc. 7 at 6.) GRE claims that it already has suffered immediate and irreparable harm.

## DISCUSSION

Federal Rule of Civil Procedure 65(b)(1) authorizes the Court to issue a temporary restraining order when "specific facts in . . . a verified complaint clearly show that immediate or irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition;" and 2) the movant has provided adequate notice to opposing party. F. R. Civ. P. 65(b)(1). The analysis "is substantially identical for [a preliminary] injunction and [a] TRO." *Stuhlbarg Intern. Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001).

A temporary restraining order represents an extraordinary remedy that the Court may award only upon "a clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Res. Def Council, Inc.*, 555 U.S. 7, 22 (2008). Plaintiffs "must establish that [they are] likely to succeed on the merits, that [they are] likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tip in [their] favor, and that an injunction is in the public interest." *Id.* at 20.

The Court questions whether GRE has established any of the *Winter* factors. GRE functions as a willing participant in heavily regulated industry, making uncertain the existence of any protected property right that would allow its 42 U.S.C. § 1983 claim to succeed. Moreover, GRE negotiated and voluntarily submitted to the terms of the AVC to regain access to the Montana Tobacco Directory. And finally, the Court notes the high likelihood that any harm GRE has suffered proves financial in nature, and, therefore, likely reparable. The Court nevertheless determines for different reasons that the nature of GRE's suit and its request for emergency relief do not present the extraordinary circumstances that require the "extraordinary" remedy of a restraining order. *See Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997).

The AVC explicitly provides that "[t]he Montana First Judicial District Court, Lewis and Clark County, shall retain jurisdiction over the subject matter of this AVC and over [GRE] for purposes of enforcement." (Doc. 8-1 at 4.) The Court has

explained that the question now before it—whether to take the extraordinary measure of issuing a restraining order—already sits with a Montana state district court: GRE has represented that it commenced seeking review of and emergency relief from the Attorney General's June 2023 ban and removal action before it filed the instant action in this Court. (*See* Doc. 18.) GRE also explicitly argued during the hearing on its Motion that Montana's First Judicial District represented the proper forum for any action arising from the enforcement of the AVC or Montana's tobacco regulation statutes. (*See id.*)

The Court agrees and deems it prudent to allow the Montana state district court the opportunity to resolve the question before it. GRE has not identified any unusual circumstances that would weigh in favor of the Court's intervention in an essentially parallel state court proceeding, a proceeding where the Montana state district court remains better positioned to evaluate issues involving likely significant state interests. The Court also assumes that the case and motion now pending before the Montana state district court will provide GRE adequate opportunity to raise any constitutional or other procedural challenges to the Attorney General's actions. The Court will deny, in part, GRE's Motion for these reasons. The Court will defer to the Montana state district court to address the motion and related issues first filed in that court.

**ORDER**

Accordingly, **IT IS ORDERED** that:

1. GRE's Motion for a Temporary Restraining Order (Doc. 6) is DENIED, IN PART. The Court DENIES GRE's request for a temporary restraining order.

2. The Court reserves ruling on GRE's request for a preliminary injunction and show-cause hearing pending resolution of the motions now before the Montana state district court.

DATED this 17th day of July, 2023.


_____
Brian Morris, Chief District Judge
United States District Court