IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
HELENA DIVISION

| | |
|---|---|
| GRAND RIVER ENTERPRISES SIX NATIONS, LTD., <br><br> Plaintiff, <br><br> v. <br><br> AUSTIN KNUDSEN, in his official capacity, Attorney General of the State of Montana, <br><br> Defendant. | **CV-23-48-H-BMM** <br><br> **ORDER** |

## INTRODUCTION

Grand River Enterprises Six Nations, LTD., ("GRE") has asked the Court to reconsider its denial of a temporary restraining order against Montana Attorney General Austin Knudsen (the "Attorney General"). (Doc. 32-1) (Doc. 32-2.) GRE seeks to restrain the Attorney General from implementing a recent decision to impose a ban on the wholesale shipment and distribution of GRE products within Montana and to remove GRE from a state-maintained list of approved tobacco product manufacturers. (Doc. 7) (Doc. 26.) The Court held an initial hearing in this matter on July 14, 2023. The Court held a second hearing in this matter on August 28, 2023. The Court denied GRE'S emergency motion for an injunction pending

appeal and stayed consideration of GRE's motion for reconsideration pending interlocutory appeal. (Doc. 40.) The Ninth Circuit determined that GRE'S motion for reconsideration constituted a request for relief pursuant to the Federal Rule of Civil Procedure 59(e) and will hold GRE's interlocutory appeal in abeyance pending the Court's ruling. (Doc. 42.) The Court will deny GRE's motion for reconsideration based on the discussion below.

## FACTUAL AND LEGAL BACKGROUND

The facts presented for these motions mirror the facts presented for the Court's Order Denying GRE's Motion for a Temporary Restraining Order. (Doc. 17.) Montana law requires the Attorney General to maintain a directory (the "Montana Tobacco Directory") of tobacco products sold in the state. The Montana Tobacco Directory lists "all tobacco product manufacturers that have provided current and accurate certifications conforming to [specific requirements] and all brand families that are listed in the certifications." Mont. Code Ann. § 16-11-504. Montana has established a process for each tobacco product manufacturer to obtain the annual certification that allows its products' sale within the state. Mont. Code Ann. § 16-11-503. Tobacco product manufacturers must complete the certification and remain included in the Montana Tobacco Directory to sell their products.

GRE participates in the Montana tobacco market pursuant to an Assurance of Voluntary Compliance agreement ("AVC") it entered with the State in 2012. (Doc.

8-1.) The State does not require compliance agreements for every cigarette manufacturer operating in Montana. (*Id.*) GRE entered the AVC with the State following several alleged violations of the laws regulating tobacco product manufacturers. (*Id.* at 3.) GRE sought through the AVC to "come into compliance with the laws of the State of Montana and to be listed on the [Montana Tobacco Directory] as a non-participating manufacturer whose cigarettes are approved for sale in the State of Montana." (*Id.*)

The AVC requires GRE to comply with specific terms to sell its products in Montana. (*Id.*) The AVC's mandates include that GRE comply with "all local, state, and federal laws." (*Id.* at 4.) The AVC further provides that "failure to abide by any terms of this AVC is grounds for the immediate removal of [GRE] from the Montana [Tobacco] Directory." (*Id.*) The AVC, as relevant here, also requires the parties to submit to the jurisdiction of the Montana state district court for enforcement actions: "The Montana First Judicial District Court, Lewis and Clark County, shall retain jurisdiction over the subject matter of this AVC and over [GRE] for purposes of enforcement." (*Id.*) The AVC finally states that "[t]he parties acknowledge and agree that this AVC is voluntarily entered into by the parties as a result of arm's-length negotiations and that the parties each had the opportunity to review this matter with counsel prior to executing this AVC." (*Id.* at 5.)

The Attorney General sent a letter to GRE on May 9, 2022, in which the Attorney General alleged that GRE had withdrawn eight brand styles from FDA review in January 2020. (Doc. 8-2 at 1-4.) As a result of GRE'S withdrawal, the FDA, in February 2021, had deemed the eight brand styles adulterated and prohibited GRE from selling, marketing, or distributing these eight styles. (Doc. 8-2) (Doc. 8-9 at 8, 30.) The Attorney General further alleged that GRE knowingly had included these eight brand styles in its 2020 and 2021 Montana Tobacco Directory certifications despite the FDA's determination that the products were adulterated. (Doc. 8-2 at 2-4.) The Attorney General viewed GRE's conduct as having violated state and federal law. (*Id.*) The Attorney General's letter informed GRE that the eight brand styles would be removed from the Montana Tobacco Directory and that the Attorney General considered the removal an "enforcement action." (Doc. 7 at 3) (Doc. 8-2 at 4.)

GRE responded to that letter on May 26, 2022. (Doc. 7 at 3.) GRE confirmed to the Attorney General that it had requested that the FDA withdraw the eight brand styles from review in January 2020. (*Id.* at 3-4.) GRE asserted that it did not object to removing the eight brand styles from the 2022 Montana Tobacco Directory. The 2022 Montana Tobacco Directory included all of GRE's products except for the eight brand styles referenced in GRE's and the Attorney General's letters. (*Id.* at 4.)

The Attorney General sent a letter to GRE on June 14, 2023, informing GRE that the Attorney General had sent all Montana wholesalers a "Notice of Intent to Remove," in which it notified Montana wholesalers that they were prohibited from selling GRE products if the products were shipped to wholesalers after June 14, 2023. (Doc. 8-9 at 1.) The letter also informed GRE that the Attorney General would remove all of GRE's products from the Montana Tobacco Directory on July 14, 2023. (Doc. 7 at 4) (Doc. 8-9 at 1-3.)

GRE has filed an action in Montana state district court in which it seeks to reopen the Montana state district court proceeding that had culminated in the AVC. (*See* Doc. 18.) GRE addresses in the Montana state court action the same 2023 ban and removal from the Montana Tobacco Directory at issue here. (*Id.*) GRE represented during the hearing on this motion that it has asked the Montana state district court to assume jurisdiction over the dispute pursuant to the AVC's jurisdictional provisions and Montana law. (*See id.*) GRE also represents that it has sought a restraining order in the Montana state district court proceeding. (*See id.*) GRE claims that it sought this injunctive relief in Montana's First Judicial District in June 2023 but has not yet received a ruling.

The Court held a hearing on GRE's motion for a temporary restraining order on July 14, 2023. The Court denied GRE's motion for a temporary restraining order on the grounds that GRE had negotiated and voluntarily submitted to the terms of

5

the AVC to regain access to the Montana Tobacco directory. (Doc. 21 at 8-9.) The AVC specifically designates the Montana First Judicial District Court, Lewis and Clark County as having jurisdiction over disputes arising from the operation of the AVC. (*Id.*)

GRE filed an interlocutory appeal of the Court's denial of the temporary restraining order. (Doc. 22.) GRE subsequently filed a motion for reconsideration asking the Court to reconsider its denial of GRE's motion for a temporary restraining order. (Doc 32-2.) GRE claims that the Court stayed consideration of GRE's motion for a temporary restraining order for reasons of docket management. (*Id.* at 2.) GRE cites to *Ernest Bock, LLC v. Steelman*, No. 22-15466, 2023 U.S. App. LEXIS 20045 (9th Cir. Aug. 3, 2023), for the proposition that district courts lack "'inherent authority to stay federal proceedings pursuant to their 'docket management powers.'" (*Id.* at 2-3.) GRE further alleged that the Court, in effect, had employed *Colorado River* abstention and committed error in doing so. (*Id.* at 3.) The Court denied GRE's emergency motion for an injunction pending appeal on September 1, 2023. (Doc. 40.) The Court concluded that GRE had failed to support its motion for injunction pending appeal because it did not satisfy the factors listed in *Winter v. Natural Res. Def Council, Inc.*, 555 U.S. 7, 22 2008. (*Id.* at 7.) The Court further reasoned that the Attorney General's enforcement action corresponds to the

6

repudiation of an agreement upon a material breach of the agreement's terms. (*Id.* at 10.)

## LEGAL STANDARD

A party may bring a motion for reconsideration of an interlocutory order pursuant to Local Rule 7.3(b). The party bringing the motion for reconsideration must specify why it meets at least one of the following:

1) (A) the facts or applicable law are materially different from the facts or applicable law the parties presented to the court before the entry of the order for which reconsideration is sought, *and*
   (B) despite the exercise of reasonable diligence, the party applying for reconsideration did not know such fact or law before entry of the order; *or*
2) new material facts arose or a change of law occurred after entry of the order.

*Id.*

A district court "possesses the inherent procedural power to reconsider, rescind, or modify an interlocutory order for cause seen by it to be sufficient[,]" so long as it has jurisdiction. *Moreira-Brown v. Las Vegas Rev. J., Inc.*, No. 216CV02002JADVCF, 2023 WL 24178, at *2 (D. Nev. Jan. 3, 2023) (quoting *City of Los Angeles, Harbor Div. v. Santa Monica Baykeeper*, 254 F.3d 882, 885 (9th Cir. 2001)). Modification of interlocutory orders is discretionary. *See Hall v. Cultural Care USA*, 624 F. Supp. 3d 1171, 1173 (N.D. Cal. 2022). Reconsideration represents an "extraordinary remedy," and the moving party bears a "heavy burden." *Inventist, Inc. v. Ninebot Inc.*, No. 3:16-CV-5688-BJR, 2023 WL 2646368, at *2 (W.D. Wash.

Mar. 27, 2023) (quoting *Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000)).

Federal Rule of Civil Procedure 65(b)(1) authorizes the Court to issue a temporary restraining order when "1) specific facts in . . . a verified complaint clearly show that immediate or irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition;" and 2) the movant has provided adequate notice to opposing party. F. R. Civ. P. 65(b)(1). The analysis "is substantially identical for [a preliminary] injunction and [a] TRO." *Stuhlbarg Intern. Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). A temporary restraining order represents an extraordinary remedy that the Court may award only upon "a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22. Plaintiffs "must establish that [they are] likely to succeed on the merits, that [they are] likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tip in [their] favor, and that an injunction is in the public interest." *Id.* at 20.

## DISCUSSION

### I.    Motion for Reconsideration

GRE has failed to support its motion for reconsideration. GRE offers no facts or applicable law that materially differs from the facts and law that GRE presented before the Court denied GRE's motion for a temporary restraining order. (*See* Doc.

32-2.) GRE instead repeats its argument that the Court applied *Colorado River* abstention. (Doc. 32-2 at 2-4). GRE raised this same argument in its emergency motion for injunction pending appeal. (*See* Doc. 27 at 6-7) (Doc. 32-2 at 2-4.) GRE's motion for reconsideration claims the Court should reach the merits of GRE's motion for a temporary restraining order. (Doc. 32-2 at 4.) GRE claims that, based on that argument and the argument advanced in GRE's emergency motion for injunction pending appeal, the Court should grant a temporary restraining order and a preliminary injunction. (*Id.*)

GRE voluntarily entered the AVC to sell its products in Montana. (Doc. 8-1.) The AVC mandates that GRE comply with "all local, state, and federal laws." (*Id.* at 4.) The AVC requires that the parties submit to the jurisdiction of the Montana state district court for enforcement actions: "The Montana First Judicial District Court, Lewis and Clark County, shall retain jurisdiction over the subject matter of this AVC and over [GRE] for purposes of enforcement." (*Id.*) The AVC also confirms that "[t]he parties acknowledge and agree that this AVC is voluntarily entered into by the parties as a result of arm's-length negotiations and that the parties each had the opportunity to review this matter with counsel prior to executing this AVC." (*Id.* at 5.) GRE is bound by the terms of the AVC, which specifically designates the Montana First Judicial District Court, Lewis and Clark County, as retaining jurisdiction for AVC disputes and enforcement (*Id.*) GRE, in its motion for

reconsideration, provides no additional facts or law that argue against this conclusion. (*See* Doc. 32-2.)

GRE claims that it has not raised federal claims in the state court proceeding in the Montana First Judicial District Court. (Doc. 32-2 at 3.) GRE instead states that it is raising "state-law claims in state court, and federal claims in federal court." (*Id.*) GRE provides no explanation as to why it failed to raise any federal claims it might have in the required state court proceeding. (*See id.*) GRE offers instead the conclusory statement that "if [GRE] loses the state court case, there will be more to do in federal court." (*Id.*) GRE fails to demonstrate any change in material facts or law, and, therefore, fails to support the heavy burden required for the Court to grant the extraordinary remedy of reconsideration.

## ORDER

Accordingly, **IT IS ORDERED:**

1. GRE's Motion for Reconsideration (Doc. 32-1) is **DENIED**.

DATED this 18th day of September 2023.

_____
Brian Morris, Chief District Judge
United States District Court