# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
### HELENA DIVISION

| | |
|---|---|
| GRAND RIVER ENTERPRISES SIX NATIONS, LTD., | **CV-23-48-H-BMM** |
| Plaintiff, | |
| v. | **ORDER** |
| AUSTIN KNUDSEN, in his official capacity, Attorney General of the State of Montana, | |
| Defendant. | |

## INTRODUCTION

Grand River Enterprises Six Nations, LTD., ("GRE") filed a motion for a temporary restraining order and a preliminary injunction on July 10, 2023. (Doc. 6.) Austin Knudsen ("the Attorney General") opposes GRE's motion. (Doc. 20.) The Court denied GRE's motion in part on July 17, 2023. (Doc. 21.) The Court denied GRE's motion for a temporary restraining order and stayed consideration of GRE's motion for a preliminary injunction. (*Id.*) GRE appealed the Court's denial of its motion for a temporary restraining order on July 20, 2023. (Doc 22.) The Ninth Circuit remanded this matter to the Court for the purpose of considering GRE's motion for a preliminary injunction (Doc. 6) on January 11, 2024. (Doc. 64.) The

Court denies GRE's motion for a preliminary injunction based on the foregoing discussion.

## FACTUAL BACKGROUND

The facts remain the same as the facts presented in the Court's previous orders. (*See* Doc. 21); (Doc. 40); (Doc. 44); (Doc. 62.) Montana law requires the Attorney General to maintain a directory (the "Montana Tobacco Directory") of tobacco products sold in the state. The Montana Tobacco Directory lists "all tobacco product manufacturers that have provided current and accurate certifications conforming to [specific requirements] and all brand families that are listed in the certifications." Mont. Code Ann. § 16-11-504. Montana has established a process for each tobacco product manufacturer to obtain an annual certification that allows its products' sale within the state. Mont. Code Ann. § 16-11-503. Tobacco product manufacturers must complete the certification and remain included in the Montana Tobacco Directory to sell their products.

GRE participates in the Montana tobacco market pursuant to an Assurance of Voluntary Compliance agreement ("AVC") it entered with the State in 2012. (Doc. 8-1.) The State does not require compliance agreements for every cigarette manufacturer operating in Montana. (*Id.*) GRE entered the AVC with the State following several alleged violations of Montana laws regulating tobacco product manufacturers. (*Id.* at 3.) GRE sought through the AVC to "come into compliance

with the laws of the State of Montana and to be listed on the [Montana Tobacco Directory] as a non-participating manufacturer whose cigarettes are approved for sale in the State of Montana." (*Id.* at 3.)

The AVC requires GRE to comply with specific terms to sell its products in Montana. (*Id.*) The AVC's mandates include that GRE comply with "all local, state, and federal laws." (*Id.* at 4.) The AVC further provides that "failure to abide by any terms of this AVC is grounds for the immediate removal of [GRE] from the Montana [Tobacco] Directory." (*Id.*) The AVC, as relevant here, also requires the parties to submit to the jurisdiction of the Montana state district court for enforcement actions: "The Montana First Judicial District Court, Lewis and Clark County, shall retain jurisdiction over the subject matter of this AVC and over [GRE] for purposes of enforcement." (*Id.*) The AVC finally states that "[t]he parties acknowledge and agree that this AVC is voluntarily entered into by the parties as a result of arm's-length negotiations and that the parties each had the opportunity to review this matter with counsel prior to executing this AVC." (*Id.* at 5.)

The Attorney General sent a letter to GRE on May 9, 2022, in which the Attorney General alleged that GRE had withdrawn eight tobacco brand styles from FDA review in January 2020. (Doc. 8-2 at 1-4.) As a result of GRE'S withdrawal, the FDA, in February 2021, had deemed the eight brand styles adulterated and prohibited GRE from selling, marketing, or distributing these eight styles. (Doc. 8-

3

2); (Doc. 8-9 at 8, 30.) The Attorney General further alleged that GRE knowingly had included these eight brand styles in its 2020 and 2021 Montana Tobacco Directory certifications despite the FDA's determination that the eight brand styles were adulterated. (Doc. 8-2 at 2-4.) The Attorney General viewed GRE's conduct as violating state and federal law. (*Id.*) The Attorney General's letter informed GRE that the eight brand styles would be removed from the Montana Tobacco Directory and that the Attorney General considered the removal an "enforcement action." (Doc. 7 at 3); (Doc. 8-2 at 4.)

GRE responded to the Attorney General's initial letter on May 26, 2022. (Doc. 7 at 3.) GRE confirmed to the Attorney General that it had requested that the FDA withdraw the eight brand styles from review in January 2020. (*Id.* at 3-4.) GRE asserted that it did not object to removing the eight brand styles from the 2022 Montana Tobacco Directory. The 2022 Montana Tobacco Directory included all of GRE's products except for the eight brand styles referenced in GRE's and the Attorney General's letters. (*Id.* at 4.)

The Attorney General sent a letter to GRE on June 14, 2023, informing it that the Attorney General had sent all Montana wholesalers a "Notice of Intent to Remove," in which it notified Montana wholesalers that they were prohibited from selling GRE products if the products were shipped to wholesalers after June 14, 2023. (*Id.* at 4); (Doc. 8-9 at 1.) The letter also informed GRE that the Attorney

4

General would remove all of GRE's products from the Montana Tobacco Directory on July 14, 2023. (Doc. 7 at 4); (Doc. 8-9 at 1-3.)

The Court held a hearing on GRE's motions on July 14, 2023. The Court denied GRE's request for a temporary restraining order on the grounds that GRE had negotiated and voluntarily submitted to the terms of AVC to regain access to the Montana Tobacco Directory in 2012. (Doc. 21 at 8-9.)

## LEGAL BACKGROUND

The procedural posture of this action proves complex. GRE filed its motion for a temporary restraining order, order to show cause, and order for a preliminary injunction on July 10, 2023. (Doc. 6.) The Court denied GRE's motion for a temporary restraining order and stayed consideration of GRE's motion for a preliminary injunction on July 17, 2023. (Doc. 21.) GRE filed an interlocutory appeal with the Ninth Circuit on July 20, 2023. (Doc. 22.) That appeal remains ongoing.

GRE filed an emergency motion for an injunction on July 24, 2023. (Doc. 26.) GRE filed additionally a motion for reconsideration on August 4, 2023. (Doc. 31.) The Court denied GRE's emergency motion for an injunction and stayed consideration of GRE's motion for reconsideration on September 1, 2023. (Doc. 40.) The Ninth Circuit ordered the Court to consider GRE's motion for reconsideration

on September 11, 2023. (Doc. 42.) The Court denied GRE's motion for reconsideration on September 18, 2023. (Doc. 44.)

GRE filed a motion to clarify and request for an indicative ruling on November 21, 2023. (Doc. 56.) The Court granted GRE's motion to clarify and request for an indicative ruling on December 11, 2023. (Doc. 63.) The Court determined that it would deny GRE's motion for a preliminary injunction on the same grounds stated in the Court's order denying GRE's emergency motion for an injunction pending appeal. (*Id.* at 5.) It appears that GRE's motion for a preliminary injunction is the only remaining motion pending before the Court.

## LEGAL STANDARD

A court may grant a preliminary injunction or temporary restraining order to preserve the status quo and prevent the "irreparable loss of rights" pending the final determination of an action. *See Textile Unlimited, Inc. v. A..BMH & Co.*, 240 F.3d 781, 786 (9th Cir. 2001) (citation omitted). The issuance of a preliminary injunction or temporary restraining order represents an extraordinary remedy that a court should not award as a matter of right but only "upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). A plaintiff seeking a preliminary injunction or temporary restraining order must satisfy the following four requirements: 1) that they likely will succeed on the merits; 2) that they likely will suffer irreparable harm in the absence of preliminary

relief; 3) that the balance of equities tips in their favor; and 4) that an injunction will serve the public interest. *Id.* at 20.

Courts in the Ninth Circuit apply a sliding scale approach to such preliminary relief. *See All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). The reviewing court must balance the elements "so that a stronger showing of one element may offset a weaker showing of another." *Id*. "Serious questions" going to the merits, combined with a balance of hardships tipping sharply towards the plaintiffs, can support issuance of a preliminary injunction, "so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Id.* "Serious questions," for the purposes of injunctive relief, "refers to questions which cannot be resolved one way or the other at the hearing on the injunction and as to which the [C]ourt perceives a need to preserve the status quo lest one side prevent resolution of the questions or execution of any judgment by altering the status quo." *Republic of the Philippines v. Marcos*, 862 F.2d 1355, 1362 (9th Cir. 1988).

## DISCUSSION

The analysis proves the same as the Court's analysis in its order denying GRE's emergency motion for an injunction. (Doc. 21 at 8-10.)  GRE has failed to support its motion for a preliminary injunction and has not fulfilled the *Winter*s factors. GRE has not shown that it will succeed on the merits of the case.

Due process lies at the center of GRE's claims. GRE argues that constitutional due process required prior notice and an opportunity to be heard before the Attorney General could deprive GRE of its status as a tobacco product manufacturer operating in Montana. (Doc. 7 at 8-9.) Procedural due process imposes constraints on governmental decisions that deprive individuals of "liberty" or "property" interests within the meaning of the Due Process Clause of the Fourteenth Amendment. *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). Success on its constitutional violation claim would require GRE to establish the following elements: 1) GRE possesses a property interest protected by the Fourteenth Amendment; 2) the Attorney General deprived GRE of that interest; and 3) the State failed to afford adequate procedural rights prior to the deprivation.

GRE has failed to demonstrate that it possesses a property interest protected by the Fourteenth Amendment. GRE claims that its continued participation in Montana's tobacco market constitutes a protected property interest. (Doc. 7 at 8-9.) GRE's continued participation in Montana's tobacco market does not constitute a protected entitlement, but rather exists as a privilege of Montana's licensing scheme. The AVC between GRE and the State reflects GRE's voluntary consent to "remain in compliance with all local, state, and federal laws" in exchange for the privilege of being listed in the Montana Tobacco Directory. (Doc. 8-1 at 3.) Further confirming that GRE possesses a privilege, as opposed to a protected entitlement that rises to

the level of a protected property right, is the fact that GRE agreed in the voluntary AVC that "[f]ailure to abide by any terms of this AVC is grounds for immediate removal of [GRE] from the Montana Directory." (*Id.* at 4.)

GRE additionally argues that federal law preempts the AVC, and thereby bars the Attorney General's attempt to enforce the Federal Food, Drug, and Cosmetic Act ("FDCA"). (Doc. 32-2 at 9.) GRE fails to demonstrate that it will be successful on this claim. GRE expressly agreed to "remain in compliance with all local, state, and federal laws." (Doc. 8-1 at 3.) The Attorney General determined that GRE failed to remain in compliance with Montana law when it continued to list and market the eight adulterated brand styles. (Doc. 8-2 at 1-4.) GRE retained the eight brand styles on the Montana Tobacco Directory for the period between 2020 and 2022, when GRE had withdrawn those brand styles from FDA consideration. (*Id.*) GRE's withdrawal of the eight brand styles prompted the FDA to deem the eight brand styles adulterated in 2020. (*Id.*)

The Attorney General's action does not rise to the level of an attempted enforcement of the FDCA that potentially would be preempted by the terms of the federal statute. The Attorney General's action instead proves more akin to a repudiation of an agreement upon a material breach of the agreement's terms. *See* Mont. Code Ann. § 16-11-504. Montana's tobacco laws direct that "[t]he attorney general may not include or retain in the directory the name or brand families of any

nonparticipating manufacturer that has failed to provide the required certification or whose certification the attorney general determines is not in compliance." *Id.* GRE's reliance on *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 348 (2001), proves unavailing. The U.S. Supreme Court determined in *Buckman Co.* that the FDCA had a preemptive effect when applied to a cause of action for a state tort-law claim. *Id.* The U.S. Supreme Court never has determined that federal preemption would apply to an alleged breach of the terms of an express voluntary agreement.

GRE also has failed to demonstrate that it likely will suffer irreparable harm in the absence of a preliminary injunction. GRE claims irreparable harm would occur in the form of financial harm, stemming from its products not being sold in Montana, and in the form of reputational harm, stemming from the loss of its market share and goodwill. (Doc. 32 at 26.) GRE admittedly may lose out on market share, but such loss proves entirely too speculative to support a claim of irreparable harm. *See Otter Prods., LLC v. United States*, 38 C.I.T. 1931, 1939 (2014) ("Allegations of harm to potential future business relations are too speculative to constitute irreparable harm.") (citations omitted.) Montana is a large state with a small population. GRE sells its products across both the United States and Canada. For example, for the 2020-sales year Tobacco Product Manufacturer Certificate of Compliance, GRE indicated that it sold in Montana only 600 units (or cartons) of the eight brand styles subsequently deemed to be adulterated. (Doc. 8-4 at 4.)

GRE also failed to demonstrate that the balance of equities tip in its favor. GRE failed similarly to demonstrate that granting the preliminary injunction will serve the public interest. GRE argues that an injunction would return the parties to the "status quo" of GRE being on the Montana Tobacco Registry. (Doc. 27 at 33-34.) GRE's arguments prove unpersuasive, however, because a stronger public interest exists in ensuring the safety of tobacco products in the state. *See* Mont. Code Ann. § 16-11-401. GRE's claim proves unpersuasive because, per the terms of the voluntarily entered-AVC, "[f]ailure to abide be the terms of this AVC is grounds for immediate removal of [GRE] from the Montana Directory." (Doc. 8-1 at 4). The status quo, per the AVC, would be GRE's removal from the Montana Directory upon the Attorney General's determination that GRE had failed to abide by the AVC's terms. (*Id.*)

## ORDER

Accordingly, **IT IS ORDERED:**

1. GRE's motion for a temporary restraining order, order to show cause, and preliminary injunction (Doc. 6) is **DENIED**.

DATED this 12th day of January, 2024.

Brian Morris, Chief District Judge
United States District Court

11